UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RUOMIN HUANG,

     Petitioner,

v.                                                                    CAUSE NO. 3:26cv38 DRL-SJF

BRIAN ENGLISH,

     Respondent.

<u>ORDER</u>

Immigration detainee Ruomin Huang filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging he is being unlawfully detained in violation of the laws or Constitution of the United States. The Warden has answered the petition, and Mr. Huang has replied. For the following reasons, the court will grant the petition.

Mr. Huang is a Chinese national and citizen. He entered the United States in 2006 as an asylee and became a lawful permanent resident in 2007. After that, he incurred several criminal convictions: a driving under the influence (DUI) conviction in 2008, a DUI conviction in 2010, a felony credit card offense in 2010, a DUI conviction in 2013, a misdemeanor fraud offense in 2017, an unlicensed driving offense in 2018, and a domestic violence offense in 2018. He served a 10-month jail sentence for the domestic violence offense; and, while he was serving that sentence, he was ordered removed in 2019 under 8 U.S.C. § 1227(a)(2)(A)(i)(I), based on a conviction for moral turpitude. He did not appeal. Mr. Huang was taken into custody by United States Immigration and Customs Enforcement (ICE) upon the conclusion of his 10-month jail sentence. He was in ICE custody from July

19, 2019 though April 2020, when he was released on a supervision order because he could not be removed to China.

Mr. Huang was detained by ICE again on September 10, 2025. He has remained in immigration custody since then. He argues his continued detention is unreasonable because ICE has not been able to remove him to China.

In answering the petition, the Warden (through federal counsel) does not contend Mr. Huang violated a condition of his supervision order. Instead, the Warden argues that Mr. Huang was detained to effectuate his removal to China. The Warden provided a declaration from a deportation officer, attesting that his office "continues to work with Headquarters Removal Management Division to attempt to obtain travel documents to remove [Mr. Huang] to China" [8-1 at 3].[1] As of January 30, 2026, when the declaration was signed, ICE Enforcement and Removal Operations (ERO) did not have travel documents for Mr. Huang to be removed to China.

In reply, Mr. Huang argues that the Warden's response does not show a likelihood of removal to China because it is silent as to whether the agency possesses the necessary documents, particularly his birth certificate, to obtain a travel document for him from China. Nor, he continues, does the Warden provide any information about whether China, which historically has been uncooperative in accepting removals, has been accepting removals recently.

---

[1] The Warden's brief claims that ERO has requested travel documents from China [8 at 8]. But the declaration from the deportation officer does not say that travel documents have been requested, only that they are working with the Headquarters Removal Management Division to obtain travel documents, which falls short of actually submitting a request for travel documents to China.

2

The Warden first argues that the court lacks subject matter jurisdiction to hear this petition, under both 8 U.S.C. § 1252(b)(9) and § 1252(g). The court has thoroughly considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Huang began when he was released from jail in 2019 and turned over to immigration authorities. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer — what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[2] Given his criminal convictions, Mr. Huang's detention years ago was authorized by § 1231(a)(6). The Warden likewise relies on this same statute as the basis for his current detention.

---

[2] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533

4

U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely

5

because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 4-5 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 3-4 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[3] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Mr. Huang was detained for about nine months in 2019 and 2020 until he was released on a supervision order in April 2020. Back then, ICE could not obtain a travel document for him to return to China. That period of detention, and its conclusion, complied with the standards from *Zadvydas*, and no one has challenged this. From April 2020 until September 2025, when he was detained again, neither side reports any progress toward his removal.

Even after his detention in September 2025, the government ostensibly has not requested any travel documents. Instead, ICE officials are still working with Headquarters Removal Management Division to request travel documents. As of January 2026, no travel

---

[3] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

documents had been requested; and, even now, nearly three months later, there has been no update to suggest that travel documents have been requested. There may be a hope in ICE's continued efforts to obtain travel documents, but the court cannot find this to mean, given this record, that there is a reasonable likelihood of removal in the foreseeable future. The Warden has provided no explanation for why it has taken so long to request travel documents, what specific efforts have been devoted to pursue this particular request, or what other steps have been (or will be) taken to make removal a reasonably foreseeable prospect, much less that there are, tied up in any of this, foreign policy judgments that merit unique deference. Mr. Huang's current period of detention has exceeded seven months, beyond any presumptively reasonable period.

The only reasonable finding on this record is that immigration enforcement could not remove Mr. Huang to China in 2020, and that removal efforts reinitiated in September 2025 are bearing no fruit, or even seeds that might foreseeably grow into fruit. Mr. Huang has met his burden. The Warden has not rebutted this showing. Accordingly, consistent with *Zadvydas*, 533 U.S. at 699-700, and because removal is not reasonably foreseeable, the court finds "continued detention unreasonable and no longer authorized by statute," albeit with his release occurring under supervision.

Because the court finds that Mr. Huang's detention is not statutorily authorized, it declines to consider his other argument that his re-detention was in violation of agency regulations.

For these reasons, the court:

7

(1) GRANTS the petition (ECF 1) to the extent that the court ORDERS the respondent to release Ruomin Huang on the same conditions of supervision that existed before his re-detention and to certify compliance with this order by filing a notice with the court by **May 5, 2026**, and

(2) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure Ruomin Huang's release.

SO ORDERED.

May 4, 2026                                     *s/ Damon R. Leichty*
                                               Judge, United States District Court